# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DEREK MORTLAND, ) | CASE NO.: 5:19CV02019 |
| ) | |
| Plaintiff, ) | JUDGE JOHN R. ADAMS |
| ) | |
| v. ) | |
| ) | |
| HOTEL STOW, L.P., d/b/a ) | **MEMORANDUM OF OPINION AND** |
| COURTYARD BY MARRIOTT, *et al.*, ) | **ORDER** |
| ) | |
| Defendants. ) | |

Currently before this Court is Plaintiff Derek Mortland's ("Mortland") First Amended Complaint seeking injunctive relief against Hotel Stow, L.P., doing business as Courtyard by Marriott ("Hotel Stow"), Marriott International, Inc. ("Marriott"), Summit Construction Co., Inc. ("Summit Construction"), Braun & Steidl, Architects, Inc. ("Braun & Steidl"), GBC Design, Inc. ("GBC Design"), and Thorson Baker & Associates, Inc. ("Thorson Baker") pursuant to Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181, *et seq*. (hereinafter "Title III"; the Americans with Disabilities Act, when discussed in general, will hereinafter be referred to as the "ADA"). (First Am. Compl. 1-2, ECF No. 19.)

Braun & Steidl, GBC Design, and Thorson Baker each filed a Motion to Dismiss Mortland's First Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Braun & Steidl Mot. to Dismiss, ECF No. 26; GBC Design Mot. to Dismiss, ECF No. 39; Thorson Baker Mot. to Dismiss, ECF No. 42.) Mortland opposed each motion to dismiss. (Opp'n to Braun & Steidl Mot. to Dismiss, ECF No. 30; Opp'n to GBC Design Mot. to Dismiss, ECF No. 41; Opp'n to Thorson Baker Mot. to Dismiss, ECF No. 45.) Braun & Steidl and GBC Design provided replies in support of their motions to dismiss.

(Braun & Steidl Reply in Supp., ECF No. 32; GBC Design Reply in Supp., ECF No. 43.) This Court has reviewed all arguments before it and for the following reasons, Braun & Steidl's Motion to Dismiss Mortland's First Amended Complaint, GBC Design's Motion to Dismiss Mortland's First Amended Complaint, and Thorson Baker's Motion to Dismiss Mortland's First Amended Complaint are each granted.

## I. STATEMENT OF FACTS

As stated in the first amended complaint, Hotel Stow's Courtyard by Marriott (hereinafter "Hotel") was built in 2005 and has since experienced "alterations, structural repairs and additions." (First Am. Compl. ¶¶ 16, 27, 40-41, ECF No. 19.) Mortland stayed at the Hotel, located in Stow, Ohio, on August 22 through August 23, 2019. (*Id.* at ¶¶ 2, 19.) Mortland, an individual with physical limitations which require the use of a wheel chair, claims that during his stay at the Hotel he was denied "access to, the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and accommodations" of the Hotel due to failures to "construct and/or design a public accommodation in accordance with the law" as well as failures "to remove architectural barriers structural in nature" all in denial of Mortland's civil rights and equal access to a public facility. (*Id.* at ¶¶ 1, 6, 17, 20, 24-26.) In fact, Mortland enumerated eighty-two alleged barriers to access he experienced at the Hotel – sixty-four of which allegedly violated the 1991 ADA Standards for Accessible Design, while all eighty-two allegedly violated the 2010 ADA Standards for Accessible Design. (*Id.* at ¶ 21.)

With respect to liability for the barriers to access, Mortland alleges Hotel Stow is the owner and operator of the Hotel. (*Id.* at ¶¶ 7-9, 16.) Mortland further claims Marriott, Summit Construction, Braun & Steidl, GBC Design, and Thorson Baker each "possessed a significant degree of control over the final design and construction" of the Hotel, which failed to provide

access to those with physical disabilities, rendering each responsible. (*Id.* at ¶¶ 3, 26, 31, 45.) Mortland specifically claims: (1) Marriott is the franchisor who maintained control over the design and construction of the Hotel; (2) Summit Construction is the general contractor responsible for providing material, labor, equipment, and services necessary to construct the Hotel; (3) Braun & Steidl is the architect firm responsible for designing, planning, and developing the Hotel; (4) GBC Design is the civil engineer firm responsible for designing, planning, and developing the Hotel; and (5) Thorson Baker is the consulting engineer responsible for designing, planning, and developing the Hotel, making all named defendants jointly and severally liable for constructing the Hotel with the alleged ADA violations. (*Id.* at ¶¶ 10-14, 45-52.) Mortland also provides that he "does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, nor their relative responsibilities in causing the access violations herein complained of, and allege a joint venture and common enterprise by all such Defendants." (*Id.* at ¶ 15.)[1] Given the alleged violations, Mortland seeks injunctive relief in the form of an order from this Court compelling all named defendants to make the Hotel accessible and in compliance with the ADA for those with physical disabilities. (*Id.* at ¶¶ 28, 30, 43-44.)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for the dismissal of claims when the claimant has failed to "state a claim upon which relief can be granted." Fed. R.

---

[1] Braun & Steidl, GBC Design, and Thorson Baker argue that Mortland's First Amended Complaint should be dismissed for failing to plead a joint venture/alter ego theory with specificity pursuant to applicable state law and federal pleading standards. (Braun & Steidl Mot. to Dismiss 6-7, ECF No. 26; GBC Design Mot. to Dismiss 9-10, ECF No. 41; Thorson Baker Mot. to Dismiss 4-5, ECF No. 42.) Mortland provides that while he made "ostensible allegations of joint venture, common enterprise and alter ego," these allegations were made "against unnamed defendants should their identities and roles" become discovered. (Opp'n to Braun & Steidl Mot. to Dismiss 6, ECF No. 6; Opp'n to GBC Mot. to Dismiss 12-13, ECF No. 41.) Therefore, because the claims of a joint venture/alter ego theory were not alleged against Braun & Steidl, GBC Design, or Thorson Baker, these allegations, and whether they meet federal pleading standards, will not be further discussed.

Civ. P. 12(b)(6). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement imposes both "legal and factual demands." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

First, and foremost, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation does not demand "detailed factual allegations," but it does necessitate more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Pleadings offering "labels and conclusions or a formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or even "naked assertions devoid of further factual enhancement" will not suffice. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Which is particularly necessary as courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Consequently, a pleading party is required to provide a factual framework that falls somewhere between a recitation of the legal elements of a claim and "detailed factual allegations" – in other words, the pleading party is required to provide well-pleaded factual allegations.

When provided, this Court then considers the well-pleaded factual allegations, "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief."

*Ashcroft*, 556 U.S. at 679. A claim is plausible when the factual content pled "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Notably, plausibility and probability are not one in the same. Rather, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The determination of whether a complaint states plausible claims for relief typically requires "the reviewing court to draw on its judicial experience and common sense" unless "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679.

### III. THE AMERICANS WITH DISABILITIES ACT

The threshold issue before this Court is one of statutory interpretation. This matter was brought pursuant to Title III of the ADA, which prohibits discrimination by public accommodations operated by private entities. Americans with Disabilities Act of 1990, Pub. L. No. 101-336, §§ 301-310, 104 Stat. 327, 353-365 (codified as 42 U.S.C. §§ 12181-12189 (1990)). Title III provides the general rule:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The remainder of 42 U.S.C. § 12182 enumerates discriminatory conduct prohibited by the statute for existing facilities including "a failure to remove architectural barriers . . . that are structural in nature, in existing facilities . . .." 42 U.S.C. § 12182(b)(2)(A)(iv). *See also generally* 42 U.S.C. § 12182(b). For "[n]ew construction and alterations in public accommodations and commercial facilities" Title III provides:

> (a) . . . as applied to public accommodations and commercial facilities, discrimination for purposes of [42 U.S.C. § 12182(a)] includes –

> (1) a failure to design and construct facilities for first occupancy [after January 26, 1993] that are readily accessible to and usable by individuals with disabilities . . .

42 U.S.C. § 12183(a)(1).

Title III broadly defines commercial facilities as those "that are intended for nonresidential use" and "whose operations affect commerce." 42 U.S.C. § 12181(2). More narrowly, public accommodations are defined as private entities whose operations affect commerce which includes "an inn, hotel, motel, or other place of lodging" among many other specific establishments. 42 U.S.C. § 12181(7)(A). *See also generally* 42 U.S.C. § 12181(7)(A)-(L). As Mortland alleges, the Hotel at issue is a public accommodation pursuant to Title III definitions. (First Am. Compl. ¶ 1, ECF No. 19.)

As a preliminary matter, Title III "imposes different requirements on 'existing facilities' than it does on 'new construction'" where architectural barriers must be removed from existing public accommodations when readily achievable under 42 U.S.C. § 12182 and new establishments, whether a public accommodation or a commercial facility, must be designed and constructed in a manner readily accessible to and usable by those with disabilities under 42 U.S.C. § 12183. *Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Eng'rs, P.C.*, 950 F. Supp. 393, 395 (D.D.C. 1996). *See also United States v. Days Inns of Am.*, No. CIV. S-96-260 WBS/GGH, 1998 U.S. Dist. LEXIS 21945, at *4 and n.2 (E.D. Cal. Jan. 12, 1998) (discussing the economic policy purposes for imposing different standards on existing facilities than newly constructed facilities).

Legislative history of the ADA reflects that Congress intended Title III's application to commercial facilities to be more limited than its application to public accommodations – i.e. with respect to commercial facilities, Title III liability extends only to new commercial facilities which are designed and constructed in such a manner they are not readily accessible to the physically disabled. *See Lonberg v. Sanborn Theaters, Inc.*, No. 99-56221, 2001 U.S. App. LEXIS 21065, at

*15 n.7 (9th Cir. Aug. 6, 2001); *United States v. Days Inns*, 22 F. Supp. 2d 612, 615 (E.D. Ky. 1998); *United States v. Days Inns of Am.*, No. CIV. S-96-260 WBS/GGH, 1998 U.S. Dist. LEXIS 21945, at *4-5 and n.4 (E.D. Cal. Jan. 12, 1998) (explaining 42 U.S.C. § 12183 "was intended to insure that virtually all new construction complies with ADA mandates, increasingly moving toward the goal of making all facilities accessible to the disabled").

Because the Hotel is an existing public accommodation, to the extent Mortland is alleging Braun & Steidl, GBC Design, and Thorson Baker discriminated against him for failing to remove architectural barriers in an existing facility pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv), these claims fail as a matter of law. Liability for discrimination by failing to remove architectural barriers falls squarely upon owners, operators, lessors, or lessees of the public accommodation pursuant to 42 U.S.C. § 12182(a). Mortland does not allege that Braun & Steidl, GBC Design, or Thorson Baker are owners, operators, lessors, or lessees of the Hotel.

However, because the Hotel was built in 2005 according to the First Amended Complaint, the Hotel may also be subject to the "new construction" requirements of 42 U.S.C. § 12183(a)(1). Accordingly, the issue before this Court narrowly focuses on joint statutory interpretation of 42 U.S.C. § 12182(a) and 42 U.S.C. § 12183(a)(1). Title III's general rule, enumerated in 42 U.S.C. § 12182(a), clearly provides that owners, operators, lessors, or lessees of public accommodations are liable for certain discriminatory conduct. Although 42 U.S.C. § 12182(b) provides, in detail, the prohibited discriminatory conduct for which owners, operators, lessors, or lessees of existing public accommodations can be held liable, 42 U.S.C. § 12183(a) breaks out discrimination for failing to design and construct a readily accessible facility separately and provides that both newly constructed public accommodations and newly constructed commercial facilities must be designed and constructed in a readily accessible manner, but fails to explicitly specify those entities liable

for designing and constructing non-compliant facilities despite referring directly to 42 U.S.C. § 12182(a).

The narrow question before this Court, therefore, is whether entities other than owners, operators, lessors, or lessees may be liable for failing to design and construct a readily accessible facility under Title III of the ADA. Braun & Steidl, GBC Design, and Thorson Baker ask this Court to read 42 U.S.C. § 12182 and 42 U.S.C. § 12183 together and find that liability for designing and constructing either a new public accommodation or a new commercial facility that is not readily accessible is limited to owners, operators, lessors, or lessees of either the new public accommodation or the new commercial facility. Mortland, on the other hand, asks this Court to broadly interpret 42 U.S.C. § 12183 separate and apart from 42 U.S.C. § 12182 and expand liability for designing and constructing either a new public accommodation or a new commercial facility to those who had a significant degree of control over design and construction of the newly constructed establishment, which necessarily expands liability outside of owners, operators, lessors, or lessees. Although the Sixth Circuit Court of Appeals has not previously addressed this specific issue, other courts have, and their conclusions are instructive.

### A. Parallel Approach

This issue was before the Ninth Circuit Court of Appeals when it had to determine whether an architect of a movie theater, which was allegedly designed and constructed in a way that was inaccessible and not readily usable to those in wheelchairs, could be held liable under Title III of the ADA when the architect was not the owner, operator, lessor, or lessee of the movie theater. *Lonberg v. Sanborn Theaters, Inc.*, No. 99-56221, 2001 U.S. App. LEXIS 21065, at *1-2, 10-11 (9th Cir. Aug. 6, 2001). The argument before the Ninth Circuit was that because 42 U.S.C. § 12182(a) specifies those liable as owners, operators, lessors, or lessees *of public accommodations*,

limiting liability for failing to design and construct a readily accessible facility under 42 U.S.C. § 12183(a)(1) to those entities specified in 42 U.S.C. § 12182(a) leaves no entity liable for designing and constructing a non-compliant commercial facility. *Id.* at *11-13. Therefore, as argued, liability should extend to any entity who designs and constructs any non-compliant establishment. *Id.* at *11.

The Ninth Circuit, however, disagreed with this statutory interpretation and instead concluded that the statutory language logically indicates Congress intended the discriminatory conduct enumerated in 42 U.S.C. § 12182(b) to apply only to public accommodations and discrimination for failing to design and construct a readily accessible facility under 42 U.S.C. § 12183(a)(1) to apply to both public accommodations and commercial facilities while the general rule of liability enumerated in 42 U.S.C. § 12182(a) applies to all discriminatory conduct. *Id.* at *16-17. In other words, Congress intended the general rule of liability enumerated in 42 U.S.C. § 12182(a) to be limited when applied to commercial facilities – i.e. only applied to those commercial facilities which were inaccessible as designed and constructed. *Id.* at *17. Therefore, owners, operators, lessors, or lessees of either public accommodations or commercial facilities may be liable under Title III for discrimination for failing to design and construct a compliant facility, specifically. *Id.* at *16.

The Ninth Circuit found this statutory interpretation avoids the problems of extending liability for failing to design and construct a compliant facility to entities other than owners, operators, lessors, or lessees which "divine[s] liability wholly divorced from the text of the statute." *Id.* at *17. Furthermore, the Ninth Circuit concluded that this result properly aligns with the type of relief available under Title III – injunctive relief. *Id.* at *19. In truth, "injunctive relief is only meaningful against the person currently in control of the building" and by the time injunctive relief is sought

for an already-constructed establishment, certain entities are no longer involved with the facility which renders injunctive relief against them unmeaningful. *Id.* at *19.

Other courts have employed this parallel approach of interpreting the statutes at issue, and likewise concluded that only owners, operators, lessors, or lessees are liable for failing to design and construct either a compliant public accommodation or a compliant commercial facility. *See Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Eng'rs P.C.*, 945 F. Supp. 1 (D.D.C. 1996) (concluding liability does not extend to architects); *United States v. Days Inns of Am.*, No. CIV. S-96-260 WBS/GGH, 1998 U.S. Dist. LEXIS 21945, at *4-10 (E.D. Cal. Jan. 12, 1998); *United States v. Days Inns*, 22 F. Supp. 2d 612, 615-616 (E.D. Ky. 1998); *Whitaker v. West Vill. L.P.*, No. 3:03-CV-0411-P, 2004 U.S. Dist. LEXIS 32556, at *4-9 (N.D. Tex. Aug. 4, 2004) (concluding liability does not extend to architects); *Kuchmas v. Towson Univ.*, No. RDB 06-3281, 2007 U.S. Dist. LEXIS 66689, at *20-25 (D. Md. Sept. 10, 2007).

### B. Significant Degree of Control Approach

This issue was also before the Eighth Circuit Court of Appeals when it had to determine whether the franchisor of a hotel, which was allegedly designed and constructed in a way that failed to meet the accessibility requirements of the ADA, could be held liable under Title III when the franchisor was not the owner, operator, lessor, or lessee of the hotel. *United States v. Days Inns of Am.*, 151 F.3d 822, 823 (8th Cir. 1998). The Eighth Circuit rejected the argument supported by the Ninth Circuit – namely that liability for failing to design and construct a readily accessible facility pursuant to 42 U.S.C. § 12183(a)(1) is limited to owners, operators, lessors, or lessees of either the non-complaint public accommodation or the non-complaint commercial facility, as specified by 42 U.S.C. § 12182(a). *Id.* at 825. Instead, the Eighth Circuit adopted the argument rejected by the Ninth Circuit that because 42 U.S.C. § 12182(a) specifies those liable as owners,

operators, lessors, or lessees *of public accommodations*, limiting liability for failing to design and construct a readily accessible facility under 42 U.S.C. § 12183(a)(1) to those entities specified in 42 U.S.C. § 12182(a) leaves no entity liable for designing and constructing a non-compliant commercial facility. *Id. See also Johanson v. Huizenga Holdings*, 963 F. Supp. 1175, 1177-78 (S.D. Fla. 1997) (agreeing with the liability gap argument for commercial facilities); *United States v. Ellerbe Becket, Inc.*, 976 F. Supp. 1262, 1267-68 (D. Minn. 1997) (agreeing with the liability gap argument for commercial facilities but passing on the question of whether an entity may be liable under Title III for designing *or* constructing a non-compliant establishment); *United States v. Days Inns of Am.*, 997 F. Supp. 1080, 1082-85 (C.D. Ill. 1998) (agreeing with the liability gap argument for commercial facilities and providing that the design and construct discrimination provision allows for a "broad sweep of liability").

To fill this liability gap, and under the auspice of giving effect to the plain language of the statute and all terms contained therein, the Eighth Circuit concluded that liability for failing to design and construct a readily accessible public accommodation or commercial facility under 42 U.S.C. § 12183(a)(1) extends to any party which possesses a significant degree of control over the final design and construction of the facility. *Id.* at 826. *See also Swanson v. City of Lowell*, No. 01-10694-RWZ, 2002 U.S. Dist. LEXIS 14389, at *2 (D. Mass. Aug. 5, 2002). The Eighth Circuit clarified, however, that "not any party tangentially or remotely connected with the design and construction of a facility sustains liability if the facility is ultimately constructed in violation of the ADA" and further, the "design and construct" phrase is conjunctive, therefore, in order for an entity to be held liable it "must have been responsible for the design and construction" of the non-compliant establishment. *United States v. Days Inns of Am.*, 151 F.3d 822, 825 n.2, 826 (8th Cir. 1998) (citing *Paralyzed Veterans of Am. V. Ellerbe Becket Architects & Eng'rs, P.C.*, 945 F. Supp.

1, 2 (D.D.C. 1996) ("the phrase 'design and construct' is distinctly conjunctive. It refers only to parties responsible for both functions, such as general contractors or facilities owners who hire the necessary design and construction experts for each project.")).

### C. Analysis and Application

In statutory interpretation, courts should "give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982)) (internal quotation marks omitted). Furthermore, precedent of the Sixth Circuit Court of Appeals, in accordance with canons of statutory construction, dictates "when two or more statutes deal with the same subject, they are to be read *in pari materia* and harmonized if possible." *Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.2d 257, 262 (6th Cir. 1984). This canon of statutory construction is strongest "when the two statutes at issue were enacted by the same legislative body, at the same time." *Id.* (citing *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972)). There is no question that 42 U.S.C. § 12182 and 42 U.S.C. § 12183 were enacted by the same legislative body at the same time – these statutes were originally sections 302 and 303 of the ADA and both were enacted by Congress on July 26, 1990. *See* Americans with Disabilities Act of 1990, Pub. L. No. 101-336, §§ 302-303, 104 Stat. 327, 355-359 (codified as 42 U.S.C. §§ 12182-12183 (1990)).

In applying these canons, harmonization proves uncomplicated as the plain language of 42 U.S.C. § 12183(a) specifically invokes 42 U.S.C. § 12182(a), demonstrative of "Congress's intention of continuing the same scope of liability" between the two statutes – namely limiting liability of non-compliant establishments to owners, operators, lessors, or lessees. *United States v. Days Inns of Am.*, 22 F. Supp. 2d 612, 615 (E.D. Ky. 1998). In fact, failing to look to 42 U.S.C.

12182(a) as a "guidepost for liability would result in the consequence of an illogical limit to the reach of [42 U.S.C. § 12183(a)]." *Id.* Given the enactment of both 42 U.S.C. §§ 12182(a) and 12183(a) by the same legislative body at the same time, the direct reference to 42 U.S.C. § 12182(a) contained in 42 U.S.C. § 12183(a), Congress's explicit naming of owners, operators, lessors, or lessees as liable entities in 42 U.S.C. § 12182(a) and marked silence with respect to naming additional liable entities in 42 U.S.C. § 12183(a), it is clear Congress intended liability under Title III of the ADA for existing public accommodations, newly constructed public accommodations, and newly constructed commercial facilities to be limited to owners, operators, lessors, or lessees.[2] To read additional liability than that specifically stated into Title III, or to determine liability under 42 U.S.C. § 12183(a) alone without considering 42 U.S.C. § 12182(a), significantly expands the reach of these statutes and creates a slippery slope of liability. *See United States v. Days Inns of Am.*, 22 F. Supp. 2d 612, 615 (E.D. Ky. 1998) ("Using language such as 'design and construct' to guide liability would leave subcontractors, material suppliers, and similar entities faced with responsibilities which Congress never intended"). This Court, therefore, concludes that only owners, operators, lessors, or lessees of either public accommodations or commercial facilities may be liable under Title III for designing and constructing an inaccessible or not readily usable facility.

Accordingly, Mortland has failed to state claims upon which relief may be granted against Braun & Steidl, GBC Design, and Thorson Baker. As Mortland alleges, these entities are, respectively, an architect firm, a civil engineer firm, and a consulting engineer, each responsible

---

[2] Because this Court finds that Congress's intent in Title III is clear and unambiguous, consideration of the Department of Justice's interpretation of the statute need not occur as suggested by Mortland. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984) (explaining if Congress has "directly spoken to the precise question at issue" and Congress's intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress").

for designing, planning, and developing the Hotel. Mortland fails to provide factual material indicating, or even suggesting, that these entities own, operate, or are engaged in a lease agreement of the Hotel. Therefore, liability pursuant to 42 U.S.C. § 12183(a)(1) for failing to design and construct the Hotel in a manner readily accessible to Mortland does not extend to Braun & Steidl, GBC Design, or Thorson Baker.

Of note, even if this Court were to conclude that liability pursuant to 42 U.S.C. § 12183(a)(1) extends to those who possess a significant degree of control over the design and construction of the Hotel, Mortland's claims would still fail. Despite his conclusory statements that Braun & Steidl, GBC Design, and Thorson Baker each "possessed a significant degree of control over the final design and construction" of the Hotel, Mortland fails to provide factual material pushing these claims over the line of possibility into plausible territory. Furthermore, the statute is clear, liability is for the failure to design *and* construct a readily accessible public accommodation or commercial facility, not for a failure to design *or* construct. To extend liability to those who designed *or* constructed a non-compliant facility is an improper expansion of the statute. *See United States v. Days Inns of Am.*, No. CIV. S-96-260 WBS/GGH, 1998 U.S. Dist. LEXIS 21945, at *5 (E.D. Cal. Jan. 12, 1998) (providing examples that under such an expansion of the statute plumbers could be responsible for plumbing violations, and even an individual carpenter who frames a door too narrowly could be held personally liable). *See also Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Eng'rs P.C.*, 945 F. Supp. 1, 2 (D.D.C. 1996) ("If entities who are responsible for both design and construction can be held liable for violations of the ADA, those entities will ensure that the firms or individuals with whom they contract – experts in design or construction – will hew to the dictates of the statute and regulations").

## IV.  CONCLUSION

Accordingly, under either the Ninth Circuit's parallel approach or the Eighth Circuit's significant degree of control of design and construction approach, Mortland's claims against Braun & Steidl, GBC Design, and Thorson Baker fail as a matter of law. Mortland has failed to provide well-pleaded factual allegations, as opposed to conclusory statements, accepted as true, that plausibly demonstrate Braun & Steidl, GBC Design, or Thorson Baker were the owners, operators, lessors, or lessees of the Hotel or that these entities maintained a significant degree of control over the design *and* construction of the Hotel. Accordingly, Braun & Steidl's Motion to Dismiss Mortland's First Amended Complaint is GRANTED, GBC Design's Motion to Dismiss Mortland's First Amended Complaint is GRANTED, and Thorson Baker's Motion to Dismiss Mortland's First Amended Complaint is GRANTED.

Additionally, this Court presumes Mortland's First Amended Complaint was filed pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), as it was filed within twenty-one days of service of Braun & Steidl's Fed. R. Civ. P. 12(b)(6) motion to dismiss Mortland's original complaint – the first response filed to Mortland's original complaint. (*See generally* First Mot. to Dismiss, ECF No. 16 (filed Nov. 1, 2019); First Am. Compl., ECF No. 19 (filed Nov. 6, 2019).) As Fed. R. Civ. P. 15(a)(1) allows for one amendment as of right and Mortland's amendment was timely pursuant to the rule, Mortland's First Amended Complaint is properly before this Court, rendering Braun & Steidl's motion to dismiss Mortland's original complaint moot. It is DENIED as such.

Finally, Summit Construction asserted cross-claims against Hotel Stow, Marriott, and Braun & Steidl. (Cross-cl. 6-8, ECF No. 27.) Braun & Steidl filed a Motion to Dismiss Summit Construction's Cross-Claims, which Summit Construction did not oppose. (Mot. to Dismiss Cross-cl., ECF No. 36.) Hotel Stow and Marriott, however, stipulated with Summit Construction to stay the cross-claims against them pending resolution of Mortland's claims. (Stipulation to Stay Cross-

cl., ECF No. 40.) Accordingly, this Court will deny Braun & Steidl's Motion to Dismiss Summit Construction's Cross-Claims without prejudice and stay all pending cross-claims at this time subject to revisiting these arguments at a later time.

IT IS SO ORDERED.

DATE:  December 3, 2020               /s/ John R. Adams
                                                                           Judge John R. Adams
                                                                           UNITED STATES DISTRICT COURT